**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **MARLO CHARLES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-8108** |
| **N. BURL CAIN, WARDEN** | **SECTION "D"(5)** |


## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b) (1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C.A. §2254(e)(2).  Accordingly, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE.**


## I.  PROCEDURAL HISTORY[1]

---

[1]A portion of the procedural history was taken from the Louisiana First Circuit Court of Appeal's decision, State v. Charles, 848 So.2d 168 (Table), 2002 KA 2520 (La. App. 1 Cir. 7/2/03).  A copy of the Louisiana First Circuit's unpublished opinion is contained in the State rec., vol. 4 of 10, p. 1237.

Petitioner, Marlo Charles, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana. Petitioner was charged by grand jury indictment in Terrebonne Parish with one count of aggravated rape, in violation of La. R.S. 14:42 A (1)and (2). Petitioner pled not guilty and, after trial by jury, was found guilty as charged by a unanimous verdict. Petitioner was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On July 2, 2003, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction and sentence. State v. Charles, 848 So.2d 168 (Table), 2002 KA 2520 (La. App. 1 Cir. 7/2/03). On January 30, 2004, the Louisiana Supreme Court denied petitioner's writ application. State v. Charles, 865 So.2d 74 (La. 2004).

In October, 2004, petitioner sought post-conviction relief. Petitioner's efforts in this regard culminated on September 1, 2006, when the Louisiana Supreme Court denied his post-conviction writ application. State ex rel. Charles v. State, 936 So.2d 201 (La. 2006).

In his original application for federal habeas corpus relief, petitioner raises the following six claims: 1) the trial court erred in admitting evidence of a previous allegation of rape; 2) the trial court erred in admitting DNA evidence; 3) there was insufficient evidence to support his conviction; 4) he received ineffective assistance of counsel; 5) the State committed a Brady violation by withholding evidence; and, 6) the district attorney's

amendments to the grand jury indictment constituted a Fifth
Amendment violation. In a supplemental memorandum (rec. doc. 10),
petitioner raises the following additional claims: 1) the state
lacked probable cause to issue a warrant for his arrest; 2) he was
deprived of a defense due to the passage of time between the time
of the crime and his prosecution; and, 3) the time limitation for
commencing a prosecution had expired by the time he was brought to
trial.[2] The State, in its response (rec. doc. 9, p. 13), concedes
that the instant petition is timely and that petitioner, with
respect to the claims set forth in his original habeas application,
has exhausted his state court remedies. See Rose v. Lundy, 455
U.S. 509 (1982); Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.
1988).[3] Before proceeding to the merits, the court shall review
the applicable facts.[4]

At approximately 3:30 a.m. on March 12, 1981, the victim,
Marsha Rome, was brutally beaten and raped in Terrebonne Parish.
Prior to the attack, the victim was driving on Grand Caillou Road

---

[2]In addition to the three claims set forth above, petitioner, in
his supplemental memorandum, also reiterates two of the claims set
forth in his original petition, namely, that the State violated
Brady by improperly withholding evidence and that his indictment
was improperly amended.

[3]The State, in its supplemental response (rec. doc. 14), makes no
mention of whether petitioner exhausted his state court remedies in
connection with his supplemental claims. However, under the
provisions of 28 U.S.C. §2254(b)(2), said claims may be considered
and denied on the merits notwithstanding the failure of an
applicant to fulfill his exhaustion requirement.

[4]The facts are taken from the Louisiana First Circuit Court of
Appeal's opinion, State v. Charles, 848 So.2d 168 (Table), 2002 KA
2520 (La. App. 1 Cir. 2003).

when one of the tires on her car blew out and her vehicle was stuck on the railroad tracks.  While walking down the road to find help, she encountered and spoke to a black male who identified himself as Clyde.  He circled her and dragged her off the road.  A struggle then ensued in which the victim was bitten on the chest, mouth, ears and hand, severely beaten, threatened with a metal object, and raped while she screamed, protested and prayed.  Her assailant rubbed grass under her fingernails and rubbed her fingers on the ground in an attempt to remove his skin from under her nails. Afterwards, he allowed her to go, and she went back to the road.

Deputy Harold Domangue, Jr., of the Terrebonne Parish Sheriff's Office, saw the victim's car on the railroad tracks at approximately 3:35 a.m.  He began to look for the owner, and at approximately 3:52 a.m., he found the victim approximately one mile from her car.  She was hysterical and reported that she had been raped by a black male.  Deputy Domangue and another deputy took the victim to the hospital.  While the victim was waiting to receive medical treatment, the deputies attempted to attain from her information to enable them to identify the assailant.  The victim was able to provide a description of the clothing worn by her attacker and a general description of him.  Deputy Domangue remembered having seen a black male in the area of the rape approximately one hour prior to the time it occurred.  The description given by the victim was similar to that of the man he had seen earlier, whom he believed to be Clyde Charles.  Deputy Domangue was familiar with the Charles family.  There are seven

Charles brothers, including petitioner and Clyde Charles, who was two years older than petitioner. Deputy Domangue did not know Marlo but had met Clyde previously. Deputy Domangue sent Lieutenant Ronnie Bergeron to pick up Clyde. Lieutenant Bergeron brought Clyde to the hospital approximately thirty minutes after finding him walking immediately past Woodlawn Ranch Road on LA 57, approximately one half of a mile from where the rape occurred. The officers asked the victim to look at Clyde in order to determine whether he was the perpetrator. The victim identified Clyde as the perpetrator. She also identified him later at his rape trial. Clyde was convicted of this crime and served nineteen years in prison.

Clyde was finally able to obtain an analysis of the DNA taken from the rape kit made on the day of the rape. The DNA analysis confirmed Clyde's innocence, which he had always maintained. Clyde's brother, Marlo, was subsequently indicted for the crime.

At Marlo's trial, the victim testified that she mistakenly identified Clyde as the rapist based on the fact that the clothes he wore were the same as those worn by her attacker and based on his appearance, stature, age and the sound of his voice. The victim was not shown photographs of Marlo prior to the trial of Clyde. Deputy Domangue testified that, upon viewing photographs of both brothers, he could not tell them apart. He admitted that he had not viewed photographs of both brothers prior to the first trial. It was established that the man Deputy Domangue saw approximately one hour prior to the rape, was, in fact, Marlo.

Additionally, in legal proceedings pursued on Clyde's behalf, prior to his release, it was asserted that there had been a mistaken identity of brothers in his case and that Marlo was the perpetrator.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it

to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(2);<u>see also</u> <u>Hill</u>, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## III.  ANALYSIS

### A.  Claims 1) and 2): Trial Court Erred in Admitting Evidence of Prior Allegation of Rape and DNA Evidence

Petitioner claims that the trial court erred with respect to two evidentiary rulings.  The first ruling was the trial court's decision to allow jurors to hear evidence of another crime committed by petitioner.  As explained by the Louisiana First Circuit, the other crime involved a 1997 rape or sexual assault which took place in Virginia.

> Officer Greg Chaffer of the Hampton, Virginia, Police Department testified that on May 29, 1997, at 12:48 a.m., in Hampton, he saw a woman leaning out of a second-story window, screaming, "I'm being held hostage.  I was just raped."  The officer ran upstairs and saw a woman wearing no clothes except for a white shirt unbuttoned in front and a bra, which was up around her neck area.  She was covered in blood.  She was hysterical and yelling, "He just raped me."  The woman was P.W. who was twenty-eight years old.  Marlo Charles was also there, wearing nothing but unzipped pants.  There was blood on him, and he was carrying a knife in his right hand.  The victim was taken to the hospital where it was determined that she was badly bruised in various areas of her body, including the

left side of her face, under her eye.  Detective Richard
Barger, also of the Hampton Police Department, testified,
corroborating Officer Chaffer's testimony.  He identified
Marlo as the man he saw in the room on May 29, 1997
and testified that Marlo was arrested and was charged with
this crime, but that later the victim could not be found
and the matter did not go to trial.

Charles, 2002 KA 2520 at pp. 4-5.

According to petitioner, the prejudice associated with the
above-described testimony outweighed its probative value.
Petitioner argues:  "The decision of the court to allow evidence of
a dismissed charge that occurred sixteen years after the rape of
Marsha Rome without the testimony of the alleged victim stepped
squarely on [his] constitutional right to a fair trial and right to
confront witnesses who testified against him."[5]

The second allegedly erroneous evidentiary ruling involved
the admittance of incomplete DNA evidence.  The testimony at issue
was offered by Gina Pineda, a forensic DNA analyst.  Pineda
testified that she compared petitioner's DNA profile with the sperm
fraction retrieved from the victim on the night of the rape.
Because of the number of years which had passed between when the
rape occurred and when the DNA testing was performed and the
corresponding degradation of the vaginal swab, only "five markers",
of a possible thirteen, were identifiable from the sample.  As the
state appellate court explained:

These five markers were consistent with Marlo's DNA
profile, and, therefore, he could not be excluded as the
donor of the sperm.  (These markers were identified by a
lab from California which initially performed the DNA

---

[5]See Federal rec., docs. 1-3 and 3-2, petition for writ of habeas
corpus at p. 11.

8

test at the request of Clyde in order to prove Clyde's innocence. Clyde was excluded as the depositor of the sperm because two of his markers were not consistent with two markers of the sperm fraction. The sperm fraction was consumed during this test.) With only a five-marker profile available, the DNA test results revealed that this profile occurs once out of 71,400 persons in the African-American population. There were 14,596 African-Americans living in Terrebonne Parish, according to the 1980 census as presented in evidence by the state.

<u>Charles</u>, 2002 KA 2520 at p. 7.

According to petitioner, the above-described DNA evidence should not have been allowed because said evidence was incomplete and, therefore, misleading. Specifically, petitioner argues:

> If thirteen markers are used in a forensic setting then thirteen markers should have been used in this case. In a case that involves life imprisonment the state should be held to the highest standards, not the lowest. The defendant should not be prejudiced because it took the state nineteen years to bring him to trial and it did not have enough DNA samples to obtain thirteen markers for testing in a forensic setting.[6]

It is well-established that federal courts possess only limited authority to consider state evidentiary determinations in a state prisoner's habeas proceeding. <u>Burgett v. Texas</u>, 389 U.S. 109, 113-14 (1967). As long as the evidentiary ruling is in accordance with state law and infringes no right protected under the Constitution, habeas relief is not warranted. <u>Id.</u> <u>See also</u> <u>Robinson v. Whitley</u>, 2 F.3d 562, 566 (5th Cir. 1993), <u>cert.</u> <u>denied</u>, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994).

In reviewing petitioner's claim that the trial court erred in allowing "other crime" testimony, the state appellate court first

---

[6]<u>See</u> Federal rec., docs. 1-3 and 3-2, petition for writ of habeas corpus at p. 13.

9

examined applicable state law, specifically, La. Code Evid. Art. 412.2(A) which provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.[7]

Charles, 2002 KA 2520 at p. 4.  The "balancing test" set forth under Article 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, or waste of time."

Pursuant to the above law, the Louisiana First Circuit concluded that the trial court did not err in allowing testimony regarding the sexual assault which occurred in Virginia.  The court reasoned:

> The probative value of this testimony, in the state's burden of proving the identity of the defendant as the perpetrator, was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or waste of time.  The officers' testimony was clear and concise.  It was not confusing or unnecessarily inflammatory.  Although the attack occurred years after

---

[7]Petitioner argues that Article 412.2(A) is not applicable in this case since "it applies only to child sex abuse cases" and neither his victim in Louisiana nor his victim in Virginia were minors.  See Federal rec., docs. 1-3 and 3-2, petition for writ of habeas corpus at pp. 11-12.  However, as the Louisiana First Circuit noted, in rejecting the instant argument, Article 412.2(A) is not limited to sex offenses involving victims under the age of seventeen, but also specifically applies to "crimes involving sexually assaultive behavior" regardless of the age of the victim.  Charles, 2002 KA 2520 at p.6.

the rape for which Marlo was being charged in the instant
matter, there were many similarities between the two
attacks. The Virginia crime involved the sexual attack
of a woman in her twenties, just as the victim in the
instant matter. The victim's face was badly beaten on
the left side, just as in the instant case. The attack
in both cases was brutal and caused the victim in each
case to become hysterical. Thus, we find that this
evidence should not have been excluded under the
balancing test of La. Code Evid. art. 403.... The fact
that the incident did not result in a conviction because
the victim could not be found was a fact for the jury to
weigh in determining the credibility of the officers'
testimony. We find, however, that this fact does not
indicate any risk of unfair prejudice to defendant.
Accordingly, we find that this assignment of error is
without merit.

Charles, 2002 KA 2520 at p. 6.

Based upon the above, it is clear that the trial court's
evidentiary ruling, allowing testimony regarding petitioner's
"other crime", was in accordance with state law, specifically,
Articles 412.2(A) and 403. Further, the court finds that
petitioner suffered no impingement of his constitutional rights as
a result of this ruling. Accordingly, petitioner's claim for
habeas relief based upon the trial court's alleged wrongful
admission of "other crime" evidence is without merit.

Petitioner's claim for habeas relief based upon the alleged
wrongful admission of incomplete and/or misleading DNA evidence is
also without merit. In addressing this issue in connection with
petitioner's direct appeal, the Louisiana First Circuit examined
the applicable law.

Louisiana courts have adopted the reasoning and
observations set forth in Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 2786,
2795, 125 L.Ed.2d 469 (1993), which specifically rejected
the "general acceptance" test and outlined the means for

11

determining reliability, answering many questions as to
proper standards for admissibility of expert scientific
testimony.  In <u>Daubert</u>, the United States Supreme Court
stated an inference or assertion of scientific knowledge
must be derived by the scientific method.  Proposed
testimony must be supported by appropriate validation,
i.e., "good grounds" based on what is known.  <u>Daubert</u>,
509 U.S. at 590, 113 S.Ct. at 2795.  In short,
evidentiary reliability will be based on scientific
validity.  The trial court must determine whether the
expert is proposing to testify to scientific knowledge
assisting the trier of fact to understand or determine a
fact in issue.  The court must make a preliminary
assessment of whether the reasoning or methodology
underlying the testimony is scientifically valid and
whether that reasoning or methodology properly can be
applied to the facts at issue.  Many factors will bear on
the inquiry and "general acceptance can have a bearing on
it."  <u>Daubert</u>, 509 U.S. at 590-595, 113 S.Ct. at 2795-
2797.

<u>Charles</u>, 2002 KA 2520 at p. 8 (citations omitted).

The state appellate court next examined the procedure employed

by the trial court in making its determination that the DNA

evidence at issue was admissible.

The trial court conducted a <u>Daubert</u> hearing and
heard the testimony of Pineda, who was accepted by the
court as an expert in molecular biology and DNA forensic
analysis.  Pineda described the procedures she used in
connection with this case.  The court concluded ... that
the evidence was reliable and thus admissible at trial.
The court stated:

The testimony of Miss Pineda indicated that
the PCR DNA analysis is widely accepted as a
methodology by the scientific community and
the prior jurisprudence of this state has
found specifically that PCR DNA analysis is
reliable and admissible under the <u>Daubert</u>
standards.  It appears that all four of the
factors described by the <u>Daubert</u> case have
been met in this case.  The PCR DNA analysis
standard is accepted by the scientific
community.

The testimony of Miss Pineda clearly details
that the procedures used have been and are

12

regularly subjected to peer preview and
publication. The third factor that is whether
or not the results are testable; that is,
whether or not they can be replicated is
apparently true. Of course it's necessary
that the DNA samples be available in order to
replicate the tests, but assuming those
samples are available the results are clearly
testable as a general rule. And, finally, the
potential rate of error which is one factor
for the court to consider does not seem to be
a problem or does not seem to militate toward
not allowing this evidence in at trial of this
matter.

Miss Pineda clearly described the experimental
controls, which are used in an effort to avoid
contamination of samples, reagents,
contamination of testing procedures; and there
is clearly a standardized methodology used in
connection with the PCR DNA analysis.

Charles, 2002 KA 2520 at p. 9.

The court then concluded that the trial court's evidentiary

ruling, allowing the admission of the DNA evidence, was correct,

reasoning:

We agree with the trial court that the evidence is
relevant and reliable. The fact that the results do not
conclusively prove that only the defendant could be the
donor of the semen is a fact to be weighed by the jury.
This fact does not render the evidence unreliable; the
DNA test results were that Marlo could not be excluded as
a donor and that the statistical probability of five
markers being consistent were one in 71,400 African-
Americans. Furthermore, there were no issues of
contamination in this case. Moreover, defendant's
counsel was given full opportunity to cross-examine
Pineda in order to demonstrate that a greater number of
markers matching defendant's DNA sample, had that been
possible, would have allowed for greater statistical
probability and could have excluded defendant as a donor.
Accordingly, we find that this assignment of error is
without merit.

Charles, 2002 KA 2520 at pp.9-10.

Clearly, the above analysis does not represent an unreasonable

13

application of Supreme Court law to the facts of this case. As such, petitioner's claim for habeas corpus relief is without merit.

**B.  Claim 3): Insufficient Evidence to Support Conviction**

Petitioner argues that there was insufficient evidence to support his aggravated rape conviction.  In support of this argument, petitioner asserts that it was his brother, Clyde, as opposed to himself, who was wearing the clothing which the perpetrator allegedly had on at the time of the rape and it was Clyde, rather than himself, who the victim identified as the person who raped her.  Additionally, petitioner notes that the DNA evidence failed to conclusively prove that he was the rapist.

In addressing the instant claim in connection with petitioner's direct appeal, the Louisiana First Circuit first examined the pertinent definition of the crime of aggravated rape.

> At the time of the attack, La. R.S. 14:42(1) and (2) defined aggravated rape ... as the act of rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed (1) when the victim resists the act to the utmost, but whose resistance is overcome by force; or (2) when the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

Charles, 2002 KA 2520 at p. 14.

Thereafter, the state appellate court acknowledged that its standard of review was "limited" under Jackson v. Virginia, 443 U.S. 307 (1979). Id. Specifically, in Jackson, the Court held that a claim of insufficient evidence would lie if, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential elements

14

of the crime proven beyond a reasonable doubt.  In a situation such as this, where the "key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed," the court noted that "the state is required to negate any reasonable probability of misidentification." Id. (Citation omitted).

The court next examined applicable state law against the backdrop of Jackson's limited standard of review.

> La. R.S. 15:438 provides that the rule as to circumstantial evidence is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.  Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La. 1986).  When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.  State v. Moten, 510 So.2d 55, 61 (La. App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987).

Id. at pp. 14-15.

With the above law in mind, the Louisiana First Circuit proceeded to address petitioner's specific arguments.  With respect to petitioner's assertions that the rapist's described clothing matched Clyde's clothes, not his, and the victim identified Clyde, not him, as the rapist, the court reasoned:

> Defendant points out that the clothes worn by the rapist, as described by the victim and by Deputy Domangue, based on his recollection of having seen one of the brothers one hour prior to the rape, matched the clothes that Clyde was wearing at the time of his arrest, shortly after the rape.  This fact, however, could only lend proof to Clyde's guilt, and the evidence is clear

that Clyde was excluded by DNA testing as a donor of the
semen recovered from the victim. This fact does not
necessarily lend proof to Marlo's hypothesis of
innocence. It is possible that the two brothers were
wearing similar clothing on the night of the crime. The
victim's description, as recorded in the police report,
of a sweatsuit coat with a white stripe does not exclude
the possibility that the brothers were dressed similarly.
Furthermore, we note that Clyde was not a cooperative
witness for the state at the trial. He would not admit
that his defense prior to his release from prison had
included the assertion that his brother, Marlo, was the
perpetrator. He did, however, admit that it was not he
who spoke with Deputy Domangue in the early morning
hours, prior to the rape. Yet, he failed to explain why
he was wearing clothes that matched the description of
the rapist's clothes. Furthermore, he did not explain
why a blonde hair with properties matching the victim's
hair was found on his shirt at the time of his arrest.
It is possible that he and Marlo met after the rape and
switched clothes or were in close enough contact for the
hair to transfer to him from Marlo. Counsel for the
state simply stated in closing argument that these
questions remain unanswered. Regardless, these unknown
facts do not amount to a hypothesis of innocence that the
jury could not reasonably reject.

It is true that the victim never identified
defendant and did mistakenly identify his brother, Clyde.
Similarly, Deputy Domangue mistakenly identified
defendant's brother as the man he saw one hour prior to
the rape. The two brothers apparently resembled one
another. They were only two years apart, and Domangue
testified that he could not distinguish between the
photographs of the two men. The victim's testimony
reflects that she sincerely believed that her initial
identification of Clyde was accurate, which indicates
that Clyde resembled the rapist. Therefore, we conclude
that the initial identifications by the victim and the
deputy are somewhat probative.

Charles, 2002 KA 2520 at pp. 15–16.

With regard to the allegedly inadequate DNA evidence, the

court reasoned:

The DNA evidence, while not conclusive, did not
exclude defendant as the donor of the semen recovered
from the victim after the rape. Although only five
markers were identifiable because of the degradation of
the sample, these five markers matched defendant's DNA

16

> profile. The frequency with which these markers occur
> among African-Americans is one in 71,400. There were
> approximately 14,596 African-Americans living in
> Terrebonne Parish at the time of the crime.

Id. at p. 16.

Thereafter, the state appellate court examined the evidence which supported the jury's finding that petitioner was guilty of aggravated rape.

> The strongest evidence against defendant consists of
> his own statements and admissions. The state introduced
> defendant's own testimony from the prior trial of his
> brother, which placed him at the scene of the crime
> shortly before it occurred. Defendant testified twice
> under oath that Deputy Domangue stopped him and not Clyde
> before the rape occurred. In his interview with officers
> in Virginia, he admitted to being at the scene of the
> crime. Furthermore, he admitted that it was he and not
> his brother who had come into contact with the victim.
> He indicated that he believed the DNA evidence would
> demonstrate that he committed the crime, and he admitted
> that the victim did not want to have sex with him. When
> asked how long he had known the victim, defendant stated
> that he did not know her before that night.
> Additionally, in the instant trial, although Clyde was an
> uncooperative witness, he admitted that it was not he who
> had spoken with Deputy Domangue on the night of the
> crime.

Id.

Based upon the above, the Louisiana First Circuit concluded: "We find that the jury reasonably rejected any hypothesis of innocence presented by the defense and negated any reasonable probability of misidentification. Thus, we cannot say that a rational juror could not have voted to convict defendant of the crime of aggravated rape." Id. at 17.

This court finds that the above does not represent an unreasonable application of the Supreme Court law enunciated in

_Jackson_, _supra_, to the facts of this case. Accordingly, petitioner's insufficiency of evidence claim is without merit.

### C. Claim 4): Ineffective Assistance of Counsel

Petitioner's claim of ineffectiveness stems from counsel's alleged failure to properly prepare a defense to the presentation of DNA evidence by the state. Specifically, petitioner complains that counsel: 1) failed to act in a timely manner, waiting until February 19, 2002, six days before trial, to issue subpoenas duces tecum in an effort to obtain DNA evidence;[8] 2) failed to take measures to compel the State to produce DNA evidence in the possession of "its agents", namely, the Louisiana State Police;[9] and, 3) "failed to motion the trial court for the issuance of an attachment or the exercise of other remedial measures inherent to the trial court to effect the enforcement of the subpoenas".[10]

In addressing petitioner's ineffectiveness claim in connection with his post-conviction application, the state district court provided the following background information.

> On December 5, 2000, private counsel enrolled in this matter and continuously represented Mr. Charles through the trial, which ended on March 1, 2002. On August 24, 2001, the court conducted a _Daubert_ hearing and determined that the state would be permitted to offer DNA evidence at Mr. Charles' trial, then scheduled for September 17, 2001. On November 9, 2001, after hearing,

---

[8]_See_ Federal rec., docs. 1–3 and 3–2, petition for writ of habeas corpus at pp. 27–28.

[9]_See_ Federal rec., docs. 1–3 and 3–2, petition for writ of habeas corpus at pp. 28–29.

[10]_See_ Federal rec., docs. 1–3 and 3–2, petition for writ of habeas corpus at p. 30.

this court approved the expenditure of up to $2,000.00 of public funds by the defendant to secure the services of an expert in the field of DNA analysis to assist defense counsel. On joint motion of the state and the defendant, the trial date was rescheduled for December 3, 2001. When this court denied the defendant's motion to continue the December 3, 2001 trial, the defendant sought relief from the Louisiana Supreme Court, who ordered this court to upset the trial date and reset the matter "within a reasonable time period." The trial date was reset for February 25, 2002.

On February 8, 2002, defense counsel filed with the court two motions, one seeking discovery and inspection of DNA information alleged to be in the custody of the district attorney or others, and one requesting another continuance of the trial date. A hearing to consider both motions was set for February 25, 2002, the day the defendant's trial was scheduled to begin. On February 19, 2002, six days before trial, defense counsel requested the issuance of subpoenas duces tecum by the Terrebonne Parish Clerk of Court to the Commonwealth of Virginia, the Louisiana State Police, and ReliaGene Technologies in an effort to obtain information in their possession about DNA evidence.

At the hearing on February 25, 2002, counsel for the defendant advised the court that a DNA expert from Oklahoma City had been hired but that she needed more information from the Commonwealth of Virginia, the Louisiana State Police crime lab, and ReliaGene Technologies in order to adequately assist and advise defense counsel. It was apparent from the representations by both the prosecutor and the defense counsel at the hearing that the district attorney had made available to defense counsel all information in its file, including all information relative to DNA analyses and the anticipated testimony of the state's DNA expert. It was equally apparent that much of the information the defendant was seeking was in the possession of the other entities named above, not the district attorney.

Based on the information furnished to the court at the February 25, 2002, hearing, the court denied the defendant's motion for discovery and inspection and the defendant's motion to continue the trial. The court also noted that no one appeared at trial in response to the subpoena duces tecum requested by defense counsel six days before trial. The state's expert in DNA analysis testified at trial and was cross-examined by defense counsel.[11]

---

[11]See State rec., vol. 4 of 10, pp. 1433-1434.

Following its recitation of the background facts, the state district court reiterated the basis of petitioner's ineffectiveness claim, namely, counsel's failure to timely force the production of the above-described records so that the DNA expert, hired by the defense, could review said records and aid counsel in his defense against the state's DNA evidence. The state district court then proceeded to examine the applicable law.

> Claims of ineffective assistance of counsel ordinarily are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, a defendant must show both that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. With regard to the second element, the defendant must show that any error was so serious as to deprive him of a fair trial. To carry this burden, the defendant must show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. If the defendant makes an inadequate showing on either one of the components required by Strickland, i.e., either deficient performance or prejudice, the reviewing court need not address the other component. State of Louisiana v. Scott, 769 So.2d 1286 (La. App. 1 Cir. 2000).[12]

With the above-law in mind, the district court reasoned:

> It is not necessary for the court to determine if defense counsel's failure to aggressively pursue the information he initially sought but failed to obtain on [defendant's] behalf, fell below an objective standard of reasonableness. The court cannot and will not assume that the information sought by defense counsel from the Commonwealth of Virginia, the Louisiana State Police crime lab, and ReliaGene Technologies would have been favorable or helpful to the defendant in any way. The defendant has not made any representation or claim that the testimony of his DNA expert would have been favorable

---

[12]See State rec., vol. 4 of 10 at p. 1435.

to him if any of the information sought had been requested and obtained by defense counsel in a timely fashion. The defendant simply alleges that defense counsel failed to take the steps necessary to properly utilize the expert assistance made available to him. It may be that had defense counsel obtained the information about which the defendant complains, his own expert may have confirmed the testimony of the state's expert. The court can only speculate as to the effect the information would have had because the defendant has not pointed out what the missing information would have shown.

Even if the court assumes defense counsel's representation fell below an objective standard of reasonableness, it is apparent that [defendant] was not prejudiced by his counsel's shortcomings because there is no reasonable probability that, but for his counsel's unprofessional error, the result of the proceeding would have been different. As stated by the Court of Appeal in its July 2, 2003, opinion, the strongest evidence against [defendant] consisted of his own statements and admissions. When interviewed by police officers in Virginia, he admitted to being at the scene of the crime and that he had come into contact with the victim. He also admitted that he believed DNA evidence would demonstrate that he had raped the victim. In light of all the evidence, it is highly unlikely that he would have been acquitted of the aggravated rape with which he was charged even if defense counsel had successfully undermined the significance of the DNA evidence offered by the state.

For all of these reasons, the court will deny [defendant's] post conviction relief application to the extent it is based on his allegation of ineffective assistance of counsel.[13]

This court finds that the above reasoning does not represent an unreasonable application of the law enunciated by the Supreme Court in Strickland, supra, to the facts of this case. Accordingly, petitioner's claim for federal habeas corpus relief based upon his alleged ineffective assistance of counsel is without merit.

**D. Claim 5): Brady Violation**

---

[13]See State rec., vol. 4 of 10, pp. 1435-1437.

Petitioner claims that his constitutional rights were violated by virtue of the State's failure to provide defense counsel with documentary evidence from the Louisiana State Police Crime Lab and ReliaGene Technologies pertaining "to both labs' testing of the evidence in this case."[14] In addressing the instant claim in connection with petitioner's post-conviction application, the state district court first examined applicable Supreme Court law, along with related state law.

> The suppression by the prosecution of evidence favorable to an accused after receiving a request for the evidence violates a defendant's due process rights where the evidence is material either to guilty [sic] or punishment, without regard to the good or bad faith of the prosecution. For purposes of the State's due process duty to disclose, no difference exists between exculpatory evidence and impeachment evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Bright, 875 So.2d 37 (La. 2004). A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the omission is of sufficient significance to result in the denial of the defendant's right to a fair trial, i.e., a trial that results in a verdict worthy of confidence. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
> This court notes that the evidence withheld from a defendant, in order to constitute a violation of the defendant's due process rights under the Brady rule, must be favorable evidence of a material nature. The mere withholding of evidence does not rise to a constitutional violation.[15]

Applying the above law to the pertinent facts, the court reasoned:

> In this case, the defendant has made no showing that

---

[14]See Federal rec., docs. 1-3 and 3-2, petition for writ of habeas corpus at p. 32.

[15]See State rec., vol. 4 of 10, p. 1437 (emphasis original).

either <u>favorable</u> evidence or <u>material</u> evidence was withheld from him. The allegations of his post conviction application assume the evidence sought by the defendant from the Louisiana State Police crime lab and ReliaGene Technologies was favorable and material simply because it was "withheld." However, he does not allege or specify a single fact in support of his assumption that the information sought was, in fact, favorable or material. In the absence of such specific allegations, the defendant's post conviction relief application does not assert a violation of his constitutional rights and, therefore, does not present proper grounds for post conviction relief.[16]

This court finds that the above reasoning does not represent an unreasonable application of Supreme Court law to the facts of this case. Accordingly, petitioner's claimed <u>Brady</u> violation is without merit.

### E. Claim 6): Amendments to Grand Jury Indictment Constituted Fifth Amendment Violation

The June 6, 2000 grand jury indictment, a copy of which is attached to petitioner's habeas application as exhibit "A", charging petitioner with aggravated rape, provided, in pertinent part, that Marlo Charles:

did ... unlawfully and intentionally rape one, Marsha Rome, in which vaginal sexual intercourse was committed without the lawful consent of the said victim who was prevented from resisting the act because the said Marlo N/M/N Charles was armed with a dangerous weapon and was prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of

---

[16]<u>See</u> State rec.,. vol. 4 of 10, pp. 1437–1438 (emphasis original). The state court added that in light of defendant's failure to make the requisite showing that favorable or material evidence had been withheld from him, "it is not necessary for the court to address defendant's contention that the failure of the Louisiana State Police crime [lab] and ReliaGene Technologies to produce documentary evidence belatedly subpoenaed by defense counsel, amounted to a withhold of evidence by the prosecutor himself." <u>See</u> State rec., vol. 4 of 10, p. 1438.

execution, in violation of La. R.S. 14:42(1)(2)&(3).
On September 13, 2000, the grand jury indictment was amended by the
district attorney to correct the statutory reference from La. R.S.
14:42 (1)(2)&(3) to La. R.S. 14:42(A)(1)(2)&(3).  On February 14,
2001, the district attorney, once again, amended the indictment to
provide that Marlo Charles:

> did ... unlawfully and intentionally rape one, Marsha
> Rome, in which vaginal sexual intercourse was committed
> without the lawful consent of the said victim who
> resisted the act to the utmost, but whose resistance was
> overcome by force and was prevented from resisting the
> acts by threats of great and immediate bodily harm,
> accompanied by apparent power of execution, in violation
> of La. R.S. 14:42 A (1)(2).

The Fifth Amendment of the United States Constitution
provides, in pertinent part, that "[n]o person shall be held to
answer for a capital, or otherwise infamous crime, unless on a
presentment or indictment of a Grand Jury...."  Petitioner claims
that the district attorney's amendments to the grand jury
indictment constituted a violation of the above provision of the
Fifth Amendment which "is applicable to the states through the
Fourteenth Amendment to the U.S. Const."[17]

Petitioner's claim in this regard is without merit because the
above-quoted portion of the Fifth Amendment, known as the "Grand
Jury Clause of the Fifth Amendment", is "not incorporated by the
Fourteenth Amendment to apply to the states.  See Branzburg v.
Hayes, 408 U.S. 665, 687-88 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626

---

[17]See Federal rec., docs. 1-3 and 3-2, petition for writ of habeas
corpus at p. 35.

(1972) (noting that 'indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment'); Hurtado v. California, 110 U.S. 516, 535, 4 S.Ct. 111, 28 L.Ed. 232 (1884) (holding that the Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury)." Williams v. Haviland, 467 F.3d 527, 531 (6th Cir. 2006). Thus, the district attorney's amendments to the state grand jury indictment issued against petitioner did not constitute a violation of petitioner's Fifth or Fourteenth Amendment rights.

Additionally, to the extent petitioner claims that the amended indictment was, generally speaking, invalid under federal law, the law is clear that "[t]he sufficiency of a state indictment is appropriate for federal habeas relief only when the indictment is so deficient that the convicting court was without jurisdiction." Ewing v. Quarterman, 2007 WL 3407693, *3 (N.D. Tex. 2007), citing Riley v. Cockrell, 339 F.3d 308, 313-314 (5th Cir. 2003); Williams v. Collins, 16 F.3d 626, 637 (5th Cir. 1994). In order to determine whether an indictment was so deficient as to deprive a state court of jurisdiction, a federal court must look to state law and, "where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." Ewing, 2007 WL at *3, citing McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994); Yohey v. Collins, 985 F.2d 222,229 (5th Cir. 1993).

In the instant matter, the state district court, in connection with petitioner's post-conviction application, thoroughly addressed the issue at hand, properly characterizing the pertinent amendments

as clarifications to the elements of the original offense and finding no violation of state law as a result of the amendments.[18] Accordingly, the instant claim is without merit for purposes of attaining federal habeas corpus relief.

**F.  Supplemental Claim 1): Lack of Probable Cause to Justify Arrest**

Petitioner claims that authorities lacked probable cause to arrest him and, therefore, his arrest should have been quashed and all subsequent evidence obtained pursuant to the unlawful arrest should have been suppressed.  However, pursuant to the Supreme Court's decision in <u>Stone v. Powell</u>, 428 U.S. 465 (1976), petitioner's claim in this regard is not amenable to collateral review.  In <u>Stone</u>, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

<u>Id</u>. at 481–482 (footnote omitted); <u>see</u> <u>also</u> <u>Hamner v. Washington</u>, 65 F.3d 170, 1995 WL 508085, *4 (7th Cir. 1995).

A review of the pertinent record reflects that petitioner had a full and fair opportunity to present his Fourth Amendment claim to the state courts.  The record reflects that a motion to suppress was filed and an evidentiary hearing was held on the matter on May

---

[18]<u>See</u> State rec., vol. 4 of 10, pp. 1438–1441.

11, 2001.[19]  On appeal, the Louisiana First Circuit addressed petitioner's Fourth Amendment concerns logically and in depth, rejecting the claim and affirming his conviction.[20]  Lastly, the Louisiana Supreme Court addressed petitioner's argument, albeit by rejecting same, in denying his writ.  <u>Charles</u>, 865 So.2d 74.

In short, petitioner's Fourth Amendment claim is not properly before the court because the requirements set forth in <u>Stone</u> have been met through state court proceedings.

### G.    Supplemental Claim 2):  Deprivation of Defense Due to Passage of Time

Petitioner claims that he was unable to present as strong a defense as he could have presented if he, rather than his brother, had been initially charged and tried in connection with the rape at issue.  Petitioner complains that because approximately twenty-one years passed from the time of the rape to the time he was arrested and tried in connection with said rape, he was essentially deprived of a defense due to the degradation of DNA evidence and because people's memories had faded, making "it hard for them to give an accure [sic] account as to what happen[ed]."[21]

As the Louisiana First Circuit noted, in addressing petitioner's insufficiency of evidence claim, the strongest evidence supporting petitioner's conviction was not the alleged

_____

[19]A transcript, albeit incomplete, of the hearing on the motion to suppress evidence is contained in the State rec., vol. 2 of 8.

[20]<u>See</u> <u>State v. Charles</u>, 2002 KA 2520 at pp. 10-13.

[21]<u>See</u> Federal rec., doc. 10, supplement in support of writ of habeas corpus at p. 7.

degradated DNA evidence or the testimony of witnesses whose memories had allegedly faded, but rather, petitioner's "own statements and admissions".

> The strongest evidence against defendant consists of his own statements and admissions. The state introduced defendant's own testimony from the prior trial of his brother, which placed him at the scene of the crime shortly before it occurred. Defendant testified twice under oath that Deputy Domangue stopped him and not Clyde before the rape occurred. In his interview with officers in Virginia, he admitted to being at the scene of the crime. Furthermore, he admitted that it was he and not his brother who had come into contact with the victim. He indicated that he believed the DNA evidence would demonstrate that he committed the crime, and he admitted that the victim did not want to have sex with him.[22]

Accordingly, the court finds that petitioner suffered no due process violation by virtue of the passage of time between when the pertinent rape occurred and when petitioner was ultimately charged and tried on the charge of aggravated rape. As such, the instant claim for federal habeas corpus relief is without merit.

### H. Supplemental Claim 3): Expiration of Time Limitation for Commencing Prosecution

Petitioner claims that the State, in allowing twenty-one years to pass between the time of the crime and the time it prosecuted him in connection with said crime, violated time limitations imposed under La.C.Cr.P. arts. 572, 577 and 578. For the following reasons, petitioner's claim is without merit.

First, federal habeas corpus review is limited to questions of constitutional dimensions. See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 502 U.S. 1113 (1993).

---

[22]State v. Charles, 2002 KA 2520 at p. 16.

Absent a due process violation, federal habeas corpus relief is not warranted by virtue of the fact that a state proceeding may have been violative of state procedural law.

Second, in the instant matter, no state time limitations were violated. As the state points out in its supplemental response (rec. doc. 14, p. 4), La.C.Cr.P. art. 571 provides that there is no time limitation upon the institution of prosecution for a crime, such as aggravated rape, which is punishable by life imprisonment, or for crimes punishable by death. Petitioner's reliance upon La.C.Cr.P. art. 572 is misplaced as it is applicable to crimes which are "not punishable by death or life imprisonment". Similarly, La.C.Cr.P. art. 578 is not applicable to the instant situation as it sets forth a time limitation for the commencement of trial once a prosecution, via the filing of a charge, has been initiated.[23]

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the petition of Marlo Charles for habeas corpus relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a

---

[23]La.C.Cr.P. art 577, also cited by petitioner in support of the instant claim, is likewise inapplicable as it concerns the time frame for raising an objection based upon the claim that a prosecution was not timely instituted.

copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.

Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 13th day of ___July___, 2009.


ALMA L. CHASEZ
United States Magistrate Judge